IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| STEVEN PATTERSON, | Case No. 3:23-cv-00961-SB |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| KEVIN TILLSON, SUSAN SNELL, and JOHN C. O'BRIEN, | |
| Defendants. | |

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff Steven Patterson ("Patterson"), a self-represented litigant, filed a first amended complaint ("FAC") against Defendants Susan Snell ("Snell"), John C. O'Brien ("O'Brien") (together, "Defendants"), and Kevin Tillson ("Tillson"), alleging claims under 42 U.S.C. § 1983 ("Section 1983") for violations of his First Amendment right to petition the government for redress of grievances.[1] The Court previously dismissed Tillson. See *Patterson v. Tillson*, No.

---

[1] As further discussed below, the Court construes Patterson's FAC as also asserting negligence claims against O'Brien and Snell.

3:23-cv-00961-SB, 2024 WL 5320535 (D. Or. Dec. 20, 2024), *findings and recommendation adopted*, 2025 WL 83496 (D. Or. Jan. 13, 2025).

Now before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. (ECF No. 62.) The Court has jurisdiction over Patterson's claims pursuant to 28 U.S.C. §§ 1331 and 1332,[2] and all parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636. For the reasons that follow, the Court grants Defendants' motion for summary judgment.

## BACKGROUND

Patterson's grandmother's estate is the subject of an ongoing probate proceeding in Multnomah County Circuit Court. (FAC at 4.) In her will, Patterson's grandmother, Virla Mae Thompson ("Thompson"), named O'Brien to serve as personal representative of her estate. (*Id.* at 7; Decl. Benjamin A. Muro Supp. Defs.' Reply Defs.' Mot. Summ. J. ("Muro Reply Decl.") Ex. 1 at 3, providing a copy of Thompson's will, ECF No. 70-1.[3]) As part of Thompson's estate administration, O'Brien allegedly requested that Transamerica Agency Network, LLC

---

[2] Patterson invoked both federal question and diversity jurisdiction in his original complaint, but only invokes federal question jurisdiction in his FAC. (*Compare* Compl. at 3, ECF No. 1 *with* FAC at 3, ECF No. 32.) It appears that the requirements for diversity jurisdiction are satisfied because the parties are diverse and the amount in controversy exceeds $75,000. (*See generally* FAC, alleging that Patterson is a California resident, Defendants are Oregon residents, and the requested relief exceeds $75,000); *see also* 28 U.S.C. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, . . . and is between . . . citizens of different States[.]"). The FAC lists the following bases for federal question jurisdiction: the First Amendment right to petition, "the Civil Rights Act of 1871 codified at 42 U.S.C. § 1983 color of law," basic rights of life, liberty, and the pursuit of happiness, and John Locke's natural rights to "life, liberty, and property." (FAC at 3.)

[3] The Court cites to the CM/ECF-generated page numbers located at the top of each page for all exhibits.

PAGE 2 – OPINION AND ORDER

("Transamerica") distribute one or more of Thompson's annuities to her estate's bank account "and now the money is missing." (FAC at 4.)

During Thompson's estate administration, O'Brien resigned as the personal representative and the Multnomah County Circuit Court appointed Snell as successor personal representative of Thompson's estate. (*Id.* at 7-8.) Snell allegedly did not know and could not find any information relating to the annuities allegedly distributed to Thompson's estate. (*Id.* at 4.) Since Thompson's estate did not have sufficient funds to satisfy the estate's creditors, Snell decided to sell Thompson's house located in Portland, Oregon. (*Id.*) Snell filed a complaint with the Multnomah County Circuit Court and received a general judgment of ejectment terminating the house's occupants' right of occupancy, which included Patterson and others. (*Id.* at 6, "[T]hey sold my Grand[m]other's [e]state which I stayed in when I was in Oregon"; Decl. Susan E. Snell ("Snell Decl.") Exs. 1, 2 at 5-14, providing copies of the Complaint and General Judgment of Ejectment, ECF No. 62-2.) Patterson's and the estate's personal property were allegedly damaged or disposed of during his ejectment from Thompson's house. (FAC at 4, claiming $100,000 in damages for the "[r]emoval of the [e]state belongings"; *see also* Compl. at 7, "They ceased the house throwing away about $200,000 dollars of my belongings. My truck was towed [and] taken in front of the estate worth about $3600[.]") Snell then allegedly sold Thompson's Portland house for less than it was worth without the estate's beneficiaries' knowledge or consent. (FAC at 7, "They sold my Grand[m]other's [e]state for $300,000 and it was appraised at $450,000.")

Defendants move for summary judgment on all of Patterson's claims on the ground that Patterson has failed to identify or present any evidence creating a genuine issue of material fact relating to his claims against Defendants. (*See generally* Defs.' Mot. Summ. J. ("Defs.' Mot."),

PAGE 3 – OPINION AND ORDER

ECF No. 62.) Patterson opposes Defendants' motion, primarily arguing that he needs to subpoena Transamerica because it has failed or refused to produce documents that are relevant to his claims. (*See* Resp. Mot. Summ. J. ("Pl.'s Resp.") at 5-6, alleging that "I was also informed by Trans[a]merica [that] the [p]ersonal [r]epresentative was the only one able to request a copy of these [r]ecords from them" and "[m]y family and I have tried many, many, many times to get all the [p]ersonal [r]epresentatives to request and produce the [r]ecords but [n]o [p]ersonal [r]epresentative will produce the records/evidence.", ECF No. 64.)

## LEGAL STANDARDS

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). At the summary judgment stage, the court views the facts in the light most favorable to the non-moving party, and draws all reasonable inferences in favor of that party. *See Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005). The court does not assess the credibility of witnesses, weigh evidence, or determine the truth of matters in dispute. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)).

"Because plaintiff is proceeding pro se, the court construes his pleadings liberally and affords him the benefit of any doubt." *Wilson v. Peters*, No. 2:19-cv-01724-AC, 2020 WL 6437606, at *3 (D. Or. Sept. 25, 2020) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), *findings and recommendation adopted*, 2020 WL 6393901 (D. Or. Nov. 2, 2020). However, "there is no authority for the proposition that, on motion for summary judgment, that rule

operates to lighten the [self-represented] litigant's obligation to show a genuine issue of material fact for trial through the presentation of specific, admissible evidence." *Id.* (citation omitted).

## DISCUSSION

### I. SECTION 1983

Patterson asserts Section 1983 claims alleging that Defendants' misconduct violated his First Amendment right to petition the government for redress. (*See* FAC at 3.)

"To make out a cause of action under section 1983, plaintiffs must plead that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986) (citing *Smith v. Cremins*, 308 F.2d 187, 190 (9th Cir. 1962)). "[T]o state a claim for relief under § 1983, the plaintiff must allege that the defendant was acting under color of state law." *Cox v. Cox*, No. 6:23-cv-01744-MK, 2024 WL 68356, at *2 (D. Or. Jan. 5, 2024) (citing *Gibson*, 781 F.2d at 1338). "Generally, private parties are not acting under color of state law." *Id.* (citing *Price v. Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991)).

As the Court explained in its prior opinion, Patterson has failed to allege or identify any evidence supporting that Defendants were acting under color of state law here. *See Patterson*, 2024 WL 5320535, at *2 (dismissing Patterson's claim against Tillson in part because "Patterson fails adequately to allege that Tillson was a state actor or that he was acting under the color of state law when he was advising O'Brien, which is required to maintain a Section 1983 claim") (citations omitted); *see also Bell v. Feuerstein*, No. 3:17-cv-00075-YY, 2017 WL 1380436, at *2 (D. Or. Apr. 4, 2017) ("[T]he administering of state court probate and sale of estate property does not render the participants state actors. A probate transaction between private parties does not involve state action simply because the probate court under which the transaction is conducted is an organ of the state government." (citing *Naoko Ohno v. Yuko Yasuma*, 723 F.3d

PAGE 5 – OPINION AND ORDER

984, 995 (9th Cir. 2013))); *cf. Polk County v. Dodson*, 454 U.S. 312, 318 (1981) (holding that a court-appointed public defender who was employed by the state was not a "state actor" under Section 1983 because her representation "entailed functions and obligations in no way dependent on state authority"). Accordingly, the Court grants Defendants' motion for summary judgment on Patterson's Section 1983 claims.

## II. NEGLIGENCE

In his FAC, Patterson also asserts that he intends to hold "everyone involved accountable for the negligence[.]" (FAC at 9; *see also* Compl. at 7, repeating largely the same allegations described above against Snell and O'Brien on a form titled "Complaint for a Civil Case Alleging Negligence").

### 1. O'Brien

Patterson's primary claim against O'Brien appears to be that, after Thompson's death, O'Brien collected funds from at least one annuity in Thompson's name "and now the money is missing." (FAC at 4.) Defendants move for summary judgment on the ground that Patterson has failed to identify any evidence that a genuine issue of material fact exists regarding whether O'Brien collected funds from any annuity. (*See* Defs.' Mot. at 9-11.) Specifically, Defendants argue that the evidence in the record demonstrates that annuity funds were distributed to Thompson three years before her death and that Patterson has failed to identify any evidence supporting that O'Brien ever possessed or controlled those or any other annuity funds as the estate's personal representative. (*See id.*)

Defendants' evidence demonstrates that Thompson and Patterson's father, Billy Joe Patterson ("Billy Joe"), jointly applied to US Bancorp for a fixed annuity in December 2006. (*See* Decl. Benjamin A. Muro Supp. Defs.' Mot. Summ. J. ("Muro Decl.") Ex. 17 at 112, ECF No. 62-1.) The joint annuity application lists two account or policy numbers. First, the

PAGE 6 – OPINION AND ORDER

application lists a US Bancorp account number ending in 5725.[4] (*Id.*) Second, the application identifies "TRANSAMERICA" as the "Annuity Company," and lists a corresponding Transamerica "Contract/Policy Number" ending in 9881. (*Id.*)

On the same day and through the same US Bancorp agent, Thompson and Billy Joe appear to have submitted an "Application for Fixed Annuity" directly with "Transamerica Life Insurance Company," which included the same contract/policy number listed on the US Bancorp application. (*Id.* at 118, listing the "Contract Number" as ending in 9881.) Both applications list the "premium" or "payment" associated with the annuity as $30,000. (*See id.* at 112-13, 118.) Defendants further provide documents supporting that in July 2012, approximately six months after Billy Joe's death, Thompson submitted a "Non-Spouse Annuity Claimant's Statement" to Transamerica relating to an annuity with the same contract/policy number. (*See* Muro Decl. Ex. 14 at 87-102, listing the "Annuity Policy Number" as ending in 9881.) In that statement, Thompson reported to Transamerica that Billy Joe was deceased and requested that "[t]he proceeds from the annuity . . . be paid out as one check and the annuity closed." (*Id.* at 89.) The statement is signed by Thompson, dated, and notarized. (*Id.* at 91.)

Patterson responds that in 2015, "[a] check [f]or the Life Insurance . . . was sent to . . . Thompson['s] brother in Oklahoma from Trans[a]merica (U.S. corp. Bank) in the amount around $29,000[,] but the Annuities [were] not a part of the payout." (Pl.'s Notice - Explanation of Annuities at 1-2, ECF No. 67.) Patterson attaches a document that US Bancorp produced in response to Defendants' subpoena which states that Thompson and Billy Joe "held a direct with fund annuity" but that "you will need to contact the annuity carrier, Transamerica Life Insurance

---

[4] In the interest of privacy, the Court only identifies the last four numbers of the various accounts and policies in this case.

PAGE 7 – OPINION AND ORDER

Company for more information." (*Id.* at 4.) The US Bancorp account number listed on the document is the same number listed on the annuity application (discussed above). (*See id.*, "Account number . . . 5725 for Virla M Thomson, Billy Joe Patterson, JTWROS [i.e., joint tenants with right of survivorship.]") Patterson's handwritten annotations on the document state that "[t]his shows the annuities are at Transamerica not with Life Ins. (U.S. Ban[]corp)." (*Id.*)

Patterson also attaches a copy of the Multnomah County Circuit Court judgment appointing O'Brien as the personal representative of Thompson's estate, which he argues supports his claim that O'Brien cashed out Thompson's annuities after her death. (*See id.* at 2-5.) Finally, Patterson submits a partial recording of a phone call with a Transamerica representative discussing Thompson's account.[5] (*See* Req. Recording of TransAmerica & Patterson, ECF No. 66.)

The Court finds that Patterson has failed to identify any evidence creating a genuine issue of material fact relating to his claim that O'Brien collected Thompson's annuity funds after her death. The evidence in the summary judgment record demonstrates that Thompson and Billy Joe jointly applied to US Bancorp for an annuity in 2006, which Transamerica administered and managed. (*See* Muro Decl. Ex. 17 at 112.) The evidence further demonstrates that approximately

---

[5] Defendants move to strike, "pursuant to [Rule] 37(c)(1) and 26(a)(A)(ii), . . . any alleged evidence of tape recordings made by [Patterson] or any other evidence included with [Patterson]'s responsive documents filed with the Court since [Patterson] failed to make the appropriate disclosures to Defendants and has repeatedly refused to make available any documents responsive to Defendants' discovery requests which support [Patterson]'s claims." (Defs.' Reply Mot. Summ. J. ("Defs.' Reply") at 6, ECF No. 69.) As further discussed below, the Court finds that Patterson's failure to engage in discovery was harmless with respect to the Court's analysis herein. *Cf. Dr. Erik Natkin, D.O. P.C. v. Am. Osteopathic Ass'n*, No. 3:16-cv-01494-SI, 2024 WL 3510926, at *2 (D. Or. July 23, 2024) ("Under Rule 37(c)(1), if the party's failure to make a Rule 26(a) disclosure . . . was . . . harmless, exclusion is not required.") (simplified).

PAGE 8 – OPINION AND ORDER

six months after Billy Joe's death in 2012, Thompson requested that Transamerica liquidate that annuity and send the proceeds to her. (*See* Muro Decl. Ex. 14 at 87-102.)

With respect to Patterson's argument that he requires additional documents from Transamerica to support his claim, Defendants subpoenaed Transamerica for all of its files relating to Thompson, Billy Joe, Billy Joe's annuity (*see* Compl. at 11, referring to an account number ending in 0106 as Billy Joe's "annuity account"), and the joint annuity account discussed above. (*See* Muro Decl. Ex. 11 at 77.) In response, Transamerica produced approximately 200 documents, which included a "[c]opy of [the] Imaged Policy File, including annuity application, policy, correspondence, and claim information[.]" (Muro Decl. Ex. 12 at 84.) Transamerica's response letter also stated that the documents related to a policy number ending in "3514," and that Transamerica was "unable to provide financial transactions or account statement information[,]" but that "[t]his claim was paid and the policy was terminated in 2012." (*Id.*) Patterson argues that Defendants' subpoena was inadequate because Transamerica "sent the life insurance information only and not the Annuities information (which [are] two different Departments)." (*See* Req. Subpoena at 2, ECF No. 65.) Patterson fails to acknowledge that Defendants subpoenaed Transamerica for *all* documents relating to Thompson and Billy Joe, that Transamerica produced approximately 200 documents in response to the subpoena, that its production included information relating to the annuities owned by Thompson, Billy Joe, or both, and that Defendants produced all of those documents to Patterson. (*See* Muro Decl. Exs. 11, 12 at 77-86.) The Court concludes that serving another subpoena on Transamerica seeking the same information would not result in the production of any additional documents, and therefore the Court need not defer its consideration of Defendants' motion. See FED. R. CIV. P. 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot

present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.").

For these reasons, the Court finds that Patterson has failed to identify or provide any evidence supporting that any annuity funds were ever distributed to O'Brien or Thompson's estate, and therefore there is no genuine issue of material fact with respect to Patterson's negligence claim against O'Brien.[6] Accordingly, the Court grants Defendants' motion for summary judgment on Patterson's negligence claim against O'Brien. *See Motameni v. Adams*, No. 3:21-cv-01184-HZ, 2023 WL 4744736, at *11 (D. Or. July 24, 2023) ("[The nonmoving party] also presents no evidence Plaintiff misused the insurance proceeds . . . ; she simply speculates that the funds were misused because she does not know how the funds were spent. Such speculation is insufficient for [the nonmoving party]'s claims to survive summary judgment." (citing *Anderson*, 477 U.S. at 252)).

### 2. Snell

Patterson's primary claim against Snell appears to be that Snell, after becoming the personal representative of Thompson's estate, sold Thompson's property for less than its fair market value.[7] (*See* FAC at 4, "Susan sold my Grandmother's estate w[ithout] my consent[.]";

---

[6] The Court's conclusion is the same if it considers the recording of Patterson's conversation with a Transamerica representative. (*See* ECF No. 66.) The conversation largely relates to the representative's unwillingness to share information with Patterson because he is not an "authorized party" on the relevant account. (*Id.*) The representative also mentions that O'Brien was an authorized party on the account because he provided court documents indicating that the court appointed him as the personal representative of Thompson's estate, and that the representative was unaware that O'Brien ever received any funds. (*Id.*)

[7] To the extent Patterson is alleging a negligence claim against Snell based on allegations that she is unaware of the annuity distribution and refuses to request additional paperwork

*id.* at 7, "They sold my Gra[ndm]other's Estate for $300,000 and it was appraised at $450,000.") Patterson also appears to allege that he was living at Thompson's property part-time and that his and the estate's personal property were damaged or destroyed when Snell ejected him and others from the property. (*See id.* at 4, claiming damages from "Removal of the [e]state [b]elongings starting at $100,000"; Compl. at 7, "They ceased the house throwing away about $200,000 dollars of my belongings. My truck was towed [and] taken in front of the estate worth about $3600[.]")

### a. Real Property

Defendants move for summary judgment on the ground that Snell "acted within the scope of [her] statutory powers for the proper administration of [Thompson's] Estate" when she took possession of Thompson's Portland house, sold it, and used the proceeds to pay the estate's creditors. (Defs.' Mot. at 11-12.) In support of their motion, Defendants provide a copy of Snell's Complaint for Ejectment and a General Judgment of Ejectment relating to Thompson's property. (*See* Snell Decl. Exs. 1-2.) In her sworn declaration, Snell also states that "[o]n or around June 9, 2023, [Thompson's property] was sold for its market value [of] approximately $300,000[,]" and that "the value of the home at its final sale was lower than what was originally sought due to the poor condition [Patterson] had left the property in upon his ejectment from it." (Snell Decl. ¶¶ 4, 6.) Patterson has failed to identify or provide any evidence countering Snell's sworn declaration or supporting that Snell sold Thompson's property for less than its fair market value at the time of the sale. Therefore, there is no genuine issue of material fact with respect to Patterson's negligence claim against Snell relating to the sale of Thompson's property.

---

relating to Thompson's annuity, the Court grants Defendants' motion for summary judgment on that claim for the same reasons discussed above relating to Patterson's claim against O'Brien.

PAGE 11 – OPINION AND ORDER

Accordingly, the Court grants Defendants' motion for summary judgment on Patterson's negligence claim against Snell based on her sale of Thompson's property.

### b. Personal Property

The only evidence Patterson submits in opposition to Defendants' motion relates to the annuities discussed above, and he has not provided any evidence that his personal property was lost or damaged during his ejectment from Thompson's home. Defendants also have not submitted any evidence relating to Patterson's personal property claims.

However, Defendants present evidence that they sought to obtain discovery from Patterson relating to his personal property claims and that Patterson has refused to participate in discovery. (*See* Defs.' Mot. at 4-7; Muro Decl. ¶¶ 3-16, describing Patterson's repeated refusal to participate in discovery from October 2023 to the date of Defendants' motion.) Specifically, Patterson refused to participate in a scheduled deposition on multiple occasions, offering little or no advance notice to Defendants that he would not appear at the scheduled time and place. (*See* Muro Decl. ¶¶ 4-7, 9-13, 15-16.) Patterson also failed to respond to multiple written requests for production and requests for admission (*See id.* ¶¶ 3, 8-9, 14.)

Given the absence of any evidence in the record relating to personal property that Snell allegedly disposed of or damaged during the ejectment, the Court grants Defendants' motion for summary judgment on Patterson's remaining negligence claim against Snell. *See Brown v. Lane County*, No. 6:21-cv-01866-AA, 2024 WL 2852431, at *6 (D. Or. June 5, 2024) (entering summary judgment on the plaintiff's negligence claim because "[t]he record contains no evidence that [the defendant's alleged conduct] . . . resulted in the injury Plaintiff is alleging" (citing *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998))); *Shakir v. Adams*, No. 2:18-cv-01333, 2019 WL 2519551, at *3 (W.D. Wash. Apr. 12, 2019) (entering summary judgment on the plaintiff's claims because he "fail[ed] to present evidence to support the essential elements of his

PAGE 12 – OPINION AND ORDER

claim"), *report and recommendation adopted*, 2019 WL 2515308 (W.D. Wash. June 18, 2019), *aff'd*, 816 F. App'x 195 (9th Cir. 2020); *see also Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" (first quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); and then citing *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000))); *Relloque v. City of West Linn*, No 3:22-cv-01781-SI, 2025 WL 919443, at *1 (D. Or. Mar. 26, 2025) ("To meet its burden, 'the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." (quoting *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000))) (citation omitted).[8]

///

///

///

///

---

[8] The Court's conclusion is further supported by the evidence in the record that Patterson failed to respond to Defendants' requests for admission relevant to Patterson's negligence claims, which under Rule 36, constitutes an admission. *See* FED. R. CIV. P. 36(a)(3) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."); (Muro Decl. Ex. 6 at 41, requesting admission that Patterson does "not have any documents which reflect any of the damages [y]ou claim to have suffered as a result of Defendants' actions as alleged in [y]our Complaint"; Muro Decl. ¶ 8, "[Patterson] has not served on Defendants any responses to the[] requests [for admission]."); *see also Albra v. Selene Fin.*, No. 2:18-cv-00018-APG-PAL, 2018 WL 6603645, at *3 (D. Nev. Dec. 17, 2018) ("[The self-represented plaintiff] received the defendants' requests for admissions . . . and did not timely respond. He did not move for an extension or to withdraw the admissions. Therefore, the defendants' requests for admissions are deemed admitted."), *aff'd*, 798 F. App'x 139 (9th Cir. 2020).

PAGE 13 – OPINION AND ORDER

## CONCLUSION

For the reasons stated, the Court GRANTS Defendants' motion for summary judgment (ECF No. 62).

**IT IS SO ORDERED.**

DATED this 15th day of April, 2025.

*Stacie F. Beckerman*
HON. STACIE F. BECKERMAN
United States Magistrate Judge